1          UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF NEW YORK
2

  - - - - - - - - - - - - - X
3

  UNITED STATES OF AMERICA,  :  15-CR-252(RJD)
4                       :
                       :  U.S. Courthouse
5                       :  Brooklyn, New York
     -against-          :
6                       :  TRANSCRIPT OF
                       :  STATUS CONFERENCE
7                       :
                       :
8  JUAN ANGEL NAPOUT,     :  March 29, 2016
                       :  11:00 a.m.
9      Defendant.       :
                       :
10  - - - - - - - - - - - - - X

11  BEFORE:
               HONORABLE RAYMOND J. DEARIE, U.S.D.J.
12

  APPEARANCES:
13

  For the Government:      ROBERT L. CAPERS, ESQ.
14                    United States Attorney
                    271 Cadman Plaza East
15                    Brooklyn, New York 11201
                    BY:  EVAN M. NORRIS, ESQ.
16                         KRISTIN MACE, ESQ.
                         PAUL A. TUCHMANN, ESQ.
17                         Assistant U.S. Attorneys

18
  For the Defendant:       GREENBERG TRAURIG, LLP
19                    One International Place
                    Boston, MA  02110
20                    BY:  A. JOHN PAPPALARDO, ESQ.
                       SILVIA PINERA-VAZQUEZ, ESQ.
21                       JACQUELINE BECERRA, ESQ.

22
  Court Reporter:     Holly Driscoll, CSR
23                    Official Court Reporter
                    225 Cadman Plaza East
24                    Brooklyn, New York 11201
                    (718) 613-2274
25  Proceedings recorded by mechanical stenography, transcript
  produced by Computer-Assisted Transcript.

1         THE COURT:  Good morning.

2         THE CLERK:  We are on this morning for a status

3 conference, this is USA versus Juan Napout, docket number

4 15-CR-252, we're on superseder 1 and Mr. Napout is defendant

5 number 22.

6         Can I ask the attorneys please to note their

7 appearances for the record beginning with counsel for

8 government.

9         MR. NORRIS:  Your Honor, Evan Norris, Kristin Mace

10 and Paul Tuchmann for the United States.  Good morning, Your

11 Honor.

12         THE COURT:  Good morning.

13         MS. MACE:  Good morning.

14         THE CLERK:  I'm going to ask the attorneys please to

15 use the microphone, speak into the microphone.

16         MR. PAPPALARDO:  Good morning, Your Honor, I am

17 John Pappalardo from the law firm of Greenberg Traurig; on the

18 phone with the client, Mr. Napout, in Miami is Jacqueline

19 Becerra from Greenberg Traurig, and with me is Silvia Pinera-

20 Vazquez, co-counsel.

21         MS. PINERA-VAZQUEZ:  Good morning, Judge Dearie.

22         THE COURT:  Good morning.

23         You folks hear me on the telephone?

24         MS. BECERRA:  Yes, we do, Your Honor.

25         THE COURT:  Mr. Napout is with you?

1      MS. BECERRA:  Yes, he is, Your Honor, he is with me.

2      THE COURT:  Well, I have the correspondence, in a

3  way it's sort of anticipatory; as I've said in the past,

4  although I don't think Mr. Pappalardo -- I guess this is the

5  first time you're joining this crew, it is my intention, as

6  I've announced in the past, at the next scheduled conference

7  to schedule the entire pretrial phase and the trial.  I'm

8  reluctant to do that today because I only have one defendant

9  and counsel with me and, in fact, I'm going to put a notice

10  out to everybody to remind them that this subject is on the

11  table and then I encourage them to confer with one another and

12  with the government about a realistic trial date.

13      I fully appreciate the fact that the full roster of

14  defendants is not before me and the roster may change from

15  time to time, of course, but I think, as I said the very first

16  time we met, there comes a point in time when we have to move

17  forward and prepare for trial and we now have a sizeable core

18  of defendants and their counsel before me, many of whom have

19  had ample time, it seems to me, to familiarize themselves with

20  the discovery and the complexities of the case, many if not

21  necessarily all, but it behooves us to schedule motions and

22  come up with a trial date and I need input for that, I'm not

23  going to just arbitrarily pick a date out of the air, all the

24  obvious information that one would want, including the

25  impossible question which would be if we proceed to trial with

1   something like the core that we have now, how long a trial are

2   we talking about, for example, I'll repose this question in

3   April and make reference to it, of course, in my notice to

4   counsel, but I'm curious?

5           MR. NORRIS:  Well over one month, Your Honor.

6           THE COURT:  Well over one month, that could be

7   two months, six months, a year and a half, but well over one

8   month.

9           MR. NORRIS:  Yes.

10          THE COURT:  Okay.

11          MR. NORRIS:  And that's something that we can

12  certainly elaborate further on on the April 13th status

13  conference.

14          THE COURT:  Well, as far as legally, Mr. Pappalardo,

15  I don't know that you've got much of a position here but I am

16  all with you, in terms of the need to proceed as efficiently

17  and as quickly as is reasonably possible with trial, I am with

18  you, and I intend to schedule that trial with the collective

19  input of all of you the next time we get together which I

20  believe is April 13th and in anticipation of that I'm going to

21  alert, just remind people that that is my stated intention to

22  schedule motions and a trial date and we'll see where that

23  takes us, and get input from you all.

24          Right now we have about ten or so before the Court.

25          MR. NORRIS:  That's right and at this point with one

1 defendant, Rafael Callejas, having pled guilty yesterday, we

2 anticipate that there will be nine that will appear before the

3 Court.

4       THE COURT:  Nine, although that number could go up

5 theoretically.

6       MR. NORRIS:  It could go up --

7       THE COURT:  It could go down.

8       MR.  NORRIS:  -- it could go down, it could do

9 either.

10       THE COURT:  Let's hope it goes down only for the

11 logistics involved, although it wouldn't be the largest

12 criminal case I've ever tried, ten defendants, not by far.

13       Is there anything you want to put on the record,

14 Mr. Pappalardo?

15       MR. PAPPALARDO:  Well, Your Honor, I'm happy to

16 reserve these arguments for April 13th; I filed this motion on

17 behalf of Mr. Napout for a reason and in my review of the

18 request by the government to exclude the time a couple of

19 things struck me; number one, I understand the Speedy Trial

20 Act, Your Honor, I understand this circuit and I understand

21 that the government is asserting that Mr. Napout, who

22 currently is a defendant joined for trial, must file a motion

23 to sever for it to be considered proper argument on

24 reasonableness.

25       Having said that, Your Honor, if you look at the

1  cases that the government cited, they concede in their letter

2  to the Court on March 28th that there are, and I quote, "a

3  handful of defendants believed to be in countries that do not

4  extradite their nationals" and in part that's what they're

5  relying on when they present to the Court that this is a

6  complex case.  Let me suggest to the Court that under these

7  circumstances --

8            THE COURT:  There are, however, some still not

9  before the Court who are involved in extradition proceedings,

10  are there not?

11            MR. NORRIS:  That's right, there are several, Your

12  Honor, and as the table we included in our letter made clear,

13  three have already come from various jurisdictions earlier

14  this month.

15            THE COURT:  I interrupted you.  Go ahead, sir.

16            MR. PAPPALARDO:  Oh, no, that is perfectly fine,

17  Your Honor.  I only raise this issue for the Court because I

18  think it will be germane in connection with the Court's

19  consideration of whether or not, number one, the case remains

20  complex, but certainly with respect to setting a trial date

21  for the entire case which is what we're asking for by this

22  motion, not just for Mr. Napout.  If in the future we move to

23  sever, then we will be back before the Court.

24            What I would point out, Your Honor, is that the

25  concession by the government, in my view, is enough for the

1   Court to consider reasonableness.  The exclusion is

2   necessarily based in part on some unknown number of defendants

3   who concededly will never appear.  None of the cases cited by

4   the government in their response are ones where an (h)(6)

5   exclusion is based in part on indicted co-defendants who will

6   never be before the Court and I would also say, Your Honor,

7   not being unfamiliar with extraditions, not being unfamiliar

8   with this side of the law, I would submit to the Court that

9   this is far more complicated in terms of getting people back

10  here than whether or not a country chooses not to extradite a

11  national.  There are some significant legal issues that are

12  present in this case including, but not limited to, the fact

13  that what is asserted by the government here is not a crime in

14  the various countries where these people find themselves and

15  are currently under arrest and waiting extradition; they don't

16  meet the duality requirement, Your Honor, which is a strict

17  requirement for extradition in those countries.

18          Putting it simply, the conduct complained of here in

19  some of those countries is not a crime.  You know, the

20  government would like to assert that soccer officials are

21  government officials but they're simply not and they haven't

22  been viewed so in many of the countries which means that we're

23  dealing here with the concept of commercial bribery.

24  Commercial bribery is not a crime in some countries.  So, that

25  is the basis for the money laundering and that triggers the

1 RICO and I would submit to the Court that that makes it much

2 more difficult in addition to the idea or the concept that a

3 country may or may not wish to extradite a foreign national

4 and I would submit to the Court that that would enhance the

5 likelihood that some of these people will never see the United

6 States and never be before the jurisdiction of this Court

7 which bears upon the issues of (h)(6).

8                    THE COURT:  In part, sure.

9                    MR. PAPPALARDO:  And another point, Your Honor, I

10 wish to flag just in advance --

11                    THE COURT:  I'm not waiting for them, whether it

12 does or doesn't.

13                    MR. PAPPALARDO:  That's exactly right and we're

14 asking you not to wait for them.

15                    THE COURT:  We're going forward.

16                    MR. PAPPALARDO:  Excellent.

17                    THE COURT:  I said that the first day I met a group

18 of defendants in this case.  I don't call it complex just to

19 put a label on it, I call it complex because it was explained

20 to me by both sides of the aisle that the undertaking here in

21 terms of preparation is significant and the complexity in that

22 context has to do with basics fairness, I think we're past the

23 point, and I only designated it as complex for purposes of

24 discovery, the discovery phase.

25                    MR. PAPPALARDO:  Understood.

1          THE COURT:  Shortly the clock starts to tick.

2          MR. PAPPALARDO:  Your Honor, there's one other quick

3     point that I wish to make that perhaps could be cured prior to

4     April 13th which is the (h)(7) designation of evidence in a

5     foreign country, I'm not aware of any finding by the Court

6     that there's a preponderance of the evidence that that is the

7     case but that's not -- I just point that out.

8          THE COURT:  I haven't made such a finding.  The

9     government has made the representation, it's certainly

10    consistent with what little I do know about the case but I

11    haven't explicitly made that finding.

12         MR. PAPPALARDO:  Right.  Well, I think, Your Honor,

13    all of these issues are more properly brought up in a larger

14    setting with multiple defendants.

15         THE COURT:  Well, I'm not sure they're worth the

16    time, frankly.  You ask alternatively for a trial date.

17         MR. PAPPALARDO:  I do, Your Honor.

18         THE COURT:  You're going to get one.  You're going

19    to get one.

20         MR. PAPPALARDO:  Again, under the present state of

21    affairs, we have not filed a motion to sever so we're asking

22    for a trial date for the entire group.  That may change very

23    shortly and if it does, we certainly will be back before the

24    Court.

25         THE COURT:  That may change, what does that mean?

1      MR. PAPPALARDO:  In other words, we may file a
2  motion to sever, Your Honor.
3      THE COURT:  Oh, fine.
4      MR. PAPPALARDO:  Which then triggers the
5  reasonableness argument generally.
6      THE COURT:  I understand.  Well, depending on the
7  Court's approach to severance.
8      MR. PAPPALARDO:  Exactly.
9      THE COURT:  Which raises one of the points I'll
10 include in my notice, are there readily available common sense
11 bases to create groups of trial defendants; that may not
12 please you or Mr. Napout if you're in group two and three, but
13 do those exist?  It's one of the questions I put to all
14 counsel and will include in my notice.  I don't know that it
15 would be necessary to develop such constructs but it's
16 something we need to know and explore because the chances are,
17 as we approach trial, we're going to be adding, maybe we'll
18 add a defendant or two, you know, I'm not going to put
19 everything on halt because we've added a new defendant and
20 that defendant's counsel is stepping in from scratch.  This is
21 a pretrial phase and we're going to move in that direction.
22 So, obviously the notion of possible severance, not
23 necessarily for the classic reasons, I may not agree with you
24 on that, who knows, but just as matters of priority, of trial
25 efficiency and administration, it is something I have to

1   consider and I need input on that as well.

2        MR. NORRIS:  We'll certainly be prepared to provide

3   that, Your Honor, and we will also confer, as Your Honor will

4   direct, with the other counsel for the other defendants in

5   advance of April 13th.

6        THE COURT:  We can accomplish something, I expect to

7   set the date, you know me, I don't set unrealistic trial

8   dates, to set the date on or immediately after our April 13th

9   gathering.

10       MR. NORRIS:  Just as a process matter, I know

11  Mr. Pappalardo has suggested he may or may not seek a

12  severance, our understanding is that in order for there to be

13  a group of defendants, whether it is the ones here already or

14  some other group set down for trial, there will need to be a

15  formal severance that the defendants in the United States are

16  severed from the ones who are pending extradition and the

17  government isn't necessarily opposed to that, we can certainly

18  see the practical reasons.

19       THE COURT:  We'll cross that bridge when we have to.

20  Right now we don't have to.  We'll perhaps at some point in

21  the near to midterm future have to sever those defendants who

22  are here.  Okay.

23       MR. NORRIS:  The only reason I raise it, Your Honor,

24  is just that since Mr. Pappalardo had said in his letter from

25  the other day that he intended to file a motion for severance,

1   we had been anticipating that the Court would set a briefing

2   schedule so that defendants could file that motion or other

3   motions.

4          THE COURT:  I'm setting a briefing schedule on

5   April 13th.

6          MR. NORRIS:  Okay.

7          THE COURT:  Okay.  I'll set the briefing schedule,

8   I'm going to set the trial date.

9          Yes, ma'am.

10         MS. PINERA-VAZQUEZ:  Thank you, Judge.  If I could

11   just flag another issue which I believe the Court mentioned

12   early on?

13         THE COURT:  Excuse me just a second, I'm doing that

14   in response to the needs of all counsel who have expressed to

15   me they need this time, the only difference is because of my

16   own schedule we went from the March date to an April 13th

17   date.  I want to hear from counsel before I do anything.  I'm

18   going to set the motion schedule on the 13th as well as the

19   trial date either on or immediately thereafter.

20         MS. PINERA-VAZQUEZ:  Thank you, Judge.  I believe

21   the Court flagged out that one of the reasons for the complex

22   was for time to look at discovery, I believe that's what Your

23   Honor just said a moment ago, and this is really an issue

24   that's been a problem with us because we have not gotten any

25   discovery but for four disks that had nothing to do with

1    Mr. Napout and yesterday on the eve of this hearing we get

2    notification that there apparently are 100 CDs of audio

3    recordings and 300 CDs of papers.  So, they basically dumped

4    this on us today, the day before this hearing.  Had we not

5    filed for this -- objected to this extension of time, who

6    knows if we ever would have gotten those hundred CDs or

7    notification that they even existed.

8              So, our concern is two-fold; first of all, we've

9    been asking for discovery since the arraignment which we

10   should have gotten this information certainly not three months

11   after arraignment and, more importantly, they're saying

12   there's 100 audio CDs and we'd request some sort of direction

13   from the Court that they instruct us to where our client is

14   because we don't believe our client is in any of those CDs

15   and, more importantly, Your Honor, the CDs are in Spanish, the

16   only CD that we received from the government that was given to

17   us a month ago wasn't even transcribed.  So, Mr. Pappalardo

18   that does not speak Spanish along with many people of our team

19   have not been able to understand it because the government has

20   not provided transcripts.  So, there are significant discovery

21   issues in this case and to say the least being dumped with 100

22   allegedly audio CDs the day before this hearing is very

23   disconcerting because in the end had we not filed this motion,

24   we would have not gotten this discovery.

25             THE COURT:  Well, I hope that's not the case but why

1    did you get it so late; why did they get it so late?

2            MR. NORRIS:  Your Honor, it has nothing to do with

3    the status, we have engaged in providing ongoing discovery,

4    we've provided 30,000 pages of discovery to all defendants

5    including Mr. Napout.  Counsel is incorrect that it doesn't

6    relate to Mr. Napout.  They asked early on for any recordings

7    that had his voice.  We provided the one recording that had

8    his voice.

9            Counsel is correct that yesterday we notified

10   defense counsel who are asking for discovery to provide us

11   with a hard drive so we could make a quite large production of

12   the records that exist and bank records, Swiss MLAT bank

13   records, which is a partial production, and other records to

14   counsel.  We'll provide all of these records, bank and

15   recordings, with a very specific index precisely so that

16   counsel can identify who is intercepted, what dates and so on,

17   and that's to ensure that counsel is able to review them and

18   understand what they want to prioritize but the broader point

19   is we've been engaging in discovery, provided substantial

20   discovery, we're still engaged in that process and we're doing

21   everything we can to both get it to counsel and to get it to

22   them with the types of indices and other information they need

23   to be able to address it clearly.

24            THE COURT:  Translations?

25            MR. NORRIS:  Translations, we'll start providing

1  them as we have them clean enough, they've all signed draft

2  transcript stipulations, we'll certainly provide that as well.

3  We're trying to move the process along.  There is a lot of

4  discovery in the case, no question, and some of it continues

5  to come in, for instance, from foreign countries.

6         THE COURT:  When you say you provided it, have you

7  provided it to these folks?

8         MS. PINERA-VAZQUEZ:  No, Your Honor.

9         MR. NORRIS:  Yes, Your Honor.

10        THE COURT:  We have very simple rules here, when I

11  ask him a question, I expect an answer from him.  I'm not

12  going to cut you short, don't interrupt, all right.

13        MR. NORRIS:  Yes, Your Honor, we provided

14  substantial discovery to the defendant Napout to date.  In

15  addition, yesterday we provided a letter to this defendant,

16  as well as others, asking them to give us a hard drive so

17  we could provide yet further discovery, that is what counsel

18  is referring to at the moment but, yes, I'm not referring to

19  general discovery, I'm referring to what has been provided

20  to Napout.

21        THE COURT:  Yes, ma'am.

22        MS. PINERA-VAZQUEZ:  Yes, Your Honor, the hard drive

23  that Mr. Norris is referring to, we offered to provide a hard

24  drive, on January 14th I sent an e-mail to Ms. Mace offering

25  to provide a hard drive because I'm familiar with the Eastern

1  District discovery policies.  At that time no response was

2  received.  To say that it's been rolling discovery is really

3  not accurate, Your Honor.  The government has had a

4  significant amount of time to investigate the case before

5  they indicted our client, I would venture to say two to three

6  years from the public information that we've gathered, to all

7  of a sudden the day before this hearing say that they have 100

8  CDs and bank records of which our client will not have any

9  because there were no bank transfers, as the indictment points

10  out regarding our client, provided to us at this juncture is,

11  like I said before, it concerns us because they should have

12  provided this two months ago.  And as far as the transcripts,

13  the one call, we've had that call for two months, that call

14  does not implicate our client, our client simply says hello

15  but because I speak Spanish I understood that, Mr. Pappalardo

16  has not been able to, and a transcript has yet to be provided

17  and we just flag these issues for the Court because it hampers

18  our ability to represent our client adequately.

19          MR. PAPPALARDO:  Your Honor, if I may please, what

20  we've received from the government so far after a request on

21  the initial appearance for any statements by the defendant,

22  the only statement by the defendant is contained in one five

23  hour tape and he says hello in front of an elevator in a

24  crowded setting in a hotel, that's it.  There are no documents

25  with the exception of his name appearing misspelled in one

1  ledger which is I would argue, quite frankly, exculpatory as

2  opposed to damning. There are no other documents we've

3  received. I understand this is a conspiracy, I understand

4  we're going to get all of the other materials, what I am

5  asking for, Your Honor, and we will review those other

6  materials, I'd like to know where Mr. Napout either speaks or

7  is referenced by somebody speaking in 100 or so tapes because,

8  quite frankly, Your Honor, I don't think that there is much

9  evidence in this case which is one of the reasons why we are

10 insisting on going to trial in the case. And, again, I

11 understand the conspiratorial aspects of things; by the same

12 token, at some point in time, and we will of course need to

13 review the evidence and we will file appropriate motions once

14 that evidence is reviewed, but we would like a speedy trial,

15 Your Honor, in this case with respect to Mr. Napout which we

16 will address after the 13th of April and the status

17 conference.

18         THE COURT: I'm hearing two different things here, I

19 don't understand. To be candid, I have so little tolerance of

20 these kinds of disputes. I'm not finding fault, you have

21 problems, you bring them to my attention but here in the

22 district generally lawyers informally get together and work

23 out these discovery issues. We don't get into a lot of

24 formality and we shouldn't be getting into a lot of yapping

25 with one another, but I'm getting two different pictures here

1   about the discovery.  Have you responded to this question, do

2   you have him on tape?

3           MR. NORRIS:  We have, Your Honor, and we've

4   responded and nothing we said is different from that and to

5   the extent counsel is asking for an index with the additional

6   recordings we provide which provide evidence of the

7   racketeering conspiracy at large, we'll provide that index, it

8   won't be different from what we've described for

9   Mr. Pappalardo before which is the tape with his client's

10  voice on it that we've already provided.

11          THE COURT:  One tape?

12          MR. NORRIS:  One tape, but the point and I think the

13  disconnect here is there is voluminous discovery in this case

14  because it is a 24-year racketeering enterprise involving 27

15  defendants, three dozen co-conspirators, 15 schemes and it is

16  complex and we are obliged to provide all of it to all parties

17  and are endeavoring to do that for Mr. Napout and others.

18          THE COURT:  They have been in the case now for a

19  couple of months --

20          MR. NORRIS:  Yes.

21          THE COURT:  -- and are complaining that they don't

22  have discovery, that's why I'm going in two different

23  directions here.

24          MR. NORRIS:  No question, Your Honor.  The only

25  point is we provided 30,000 records to date.

1          THE COURT:  To them?

2          MR. NORRIS:  Yes.  We're providing more right now

3   and we're trying to get it all out the door as quickly as we

4   can but there's a lot, we're engaged in an ongoing process.

5   What I can assure the Court and will say to Mr. Pappalardo and

6   co-counsel here, we can certainly engage in the kind of

7   informal exchange so that when we provide additional

8   discovery, if the index, for instance, isn't clear to them as

9   to whether it implicates specifically their client or not,

10  we'll highlight for them the portions they may want to see.

11         THE COURT:  Have you met informally, this group?

12         MR. PAPPALARDO:  We have, Your Honor, when I

13  understood that there were arrests in Switzerland in May, I

14  called Mr. Norris a couple of days later, I told him who I

15  represented and, you know, wanted to engage in a discussion.

16  I made that fairly plain throughout the summer months.  In

17  fact, three days --

18         THE COURT:  No, I understand that, but since

19  Mr. Napout has been here have you met to work out these

20  discovery issues, schedules and so forth?

21         MR. PAPPALARDO:  We haven't, Your Honor, and we've

22  only made requests that, quite frankly, have not been

23  answered.  I would suggest, Your Honor, we can take this out

24  of the presence of the Court, we can have this discussion and

25  we'll certainly do so right now.  The Court needn't waste its

1    time with this.

2          THE COURT:  It is not a waste of time but I want you

3    to meet as professionals --

4          MR. PAPPALARDO:  Absolutely.

5          THE COURT:  -- and attempt to work this out and then

6    if you're at loggerheads and you are not getting either on a

7    timely basis or you're not getting at all something you think

8    you're entitled to, then you bring it to my attention and we

9    will indeed have it out; fair enough?

10         MR. PAPPALARDO:  That is fine, Your Honor.

11         MR. NORRIS:  Fair enough.

12         THE COURT:  We have a little push me pull you here

13   generally because we're trying to get the case on a trial

14   track and we have to make sure that the people who have to

15   defend people have the wherewithal and the information and the

16   discovery to do that.  That requires you and your team who are

17   no doubt going to be looking for a trial to get that taken

18   care of.  If the problem persists, you'll meet, bring it to my

19   attention, I'll have you back in a moment's notice, even from

20   Florida.

21         MR. NORRIS:  Thank you, Your Honor.

22         MS. PINERA-VAZQUEZ:  Thank you, Judge.

23         MR. PAPPALARDO:  Thank you, Your Honor.

24         THE COURT:  Anything else?

25         MR. NORRIS:  Can I just have one moment, Your Honor,

1  just to confer?

2          (Pause while government counsel confer.)

3          THE COURT:  I can't bear these -- we've got a case

4  to try here.  My philosophy is kill them with kindness, you

5  know, get it out there.

6          MR. NORRIS:  Your Honor, just if we could end just

7  on the exclusion of time point, we weren't certain where we

8  ended up here; again, our understanding, we think, frankly,

9  the parties share it and the Court shares it, is that the

10  speedy trial clock hasn't begun at this point.

11          THE COURT:  As of this point it has not.

12          MR. NORRIS:  Nonetheless, in an abundance of

13  caution, as we in the past have made applications to exclude

14  time based on complexity and based on the existence of MLATs

15  overseas, we would just ask that time, in an abundance of

16  caution, be excluded.

17          THE COURT:  I have no reservation or hesitation to

18  continue the exclusion in the interests of justice, the

19  complexity, look what we're talking about here, they're

20  complaining and I take their representations at face value

21  that they haven't gotten what they need and it is voluminous,

22  I'm hearing numbers like 30,000 that's got to be taken care

23  of, but I'm not going to stop the clock forever, I'm not going

24  to put you in control of the clock if you don't meet your

25  discovery obligations, that's my point, but based on what I

1  have seen and heard so far and at least up until the next

2  status conference I have no concerns or reservations that the

3  exclusion on the basis of complexity and attendant issues of

4  fairness that surround it is proper and I continue it.

5        MR. PAPPALARDO:  Thank you, Your Honor.

6        MR. NORRIS:  Thank you, Your Honor.

7        THE COURT:  Have a lovely day.

8        MS. PINERA-VAZQUEZ:  Thank you, Your Honor.

9        (Time noted:  11:30 a.m.)

10       (End of proceedings.)