```
1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   -------------------------------------x
    UNITED STATES OF AMERICA
3                                         15 CR 252(PKC)
          versus
4                                         U.S. Courthouse
    HECTOR EFRAIN TRUJILLO ALDANA,        225 Cadman Plaza East
5                                         Brooklyn, NY 11201
                        Defendant.        June 2nd, 2017
6   -------------------------------------x 2:30 PM

7          TRANSCRIPT OF CRIMINAL CAUSE FOR GUILTY PLEA
                 BEFORE THE HONORABLE PAMELA CHEN
8                 UNITED STATES DISTRICT JUDGE

9                        APPEARANCES

10  For the Government:    BRIDGET ROHDE
                           UNITED STATES ATTORNEY
11                         EASTERN DISTRICT OF NEW YORK
                           271 Cadman Plaza East
12                         Brooklyn, New York 11201
                           BY: PAUL TUCHMANN, ESQ.
13                              SAMUEL NITZE, ESQ.
                                KAITLIN FARRELL, ESQ.
14                              M. KRISTIN MACE, ESQ.
                           Assistant United States Attorneys
15

16  For the Defendant:     MIEDEL & MYSLIWIEC, LLP
                           111 Broadway, Suite 1401
17                         New York, New York 10006
                           BY:  FLORIAN MIEDEL,ESQ.
18                              JOSHUA PAULSON, ESQ.

19
    Spanish Interpreter:  Patricia Triana
20

21  Court Reporter:        LISA SCHMID, CCR, RMR
                           Official Court Reporter
22                         225 Cadman Plaza East
                           Brooklyn, New York 11201
23                         Phone:  718-613-2644
                           Fax:  718-613-2379
24
    Proceedings recorded by mechanical stenography.  Transcript
25  produced by computer-aided transcription.
```

```
 1              THE CLERK:  Criminal Cause for Pleading, Docket
 2    Number 15 CR 252, United States versus Hector Trujillo.
 3              Would the parties please state their appearances for
 4    the record?
 5              MR. TUCHMANN:  Good afternoon, Your Honor.  Paul
 6    Tuchmann for the United States.  With me is Sam Nitze, Kristin
 7    Mace and Kaitlin Farrell.
 8              THE COURT:  Good afternoon to all of you.
 9              MR. MIEDEL:  Good afternoon, Your Honor.  Florian
10    Miedel and Joshua Paulson, here with Mr. Hector Trujillo.
11              THE COURT:  Good afternoon to all of you.
12              And we'll have our court reporter state her name for
13    the record.
14              THE CLERK:  Interpreter.
15              THE COURT:  Okay.  Would the interpreter state her
16    name for the record?
17              THE INTERPRETER:  Patricia Triana, T-R-I-A-N-A.
18              THE COURT:  Do we need to swear her in?
19              (Interpreter sworn.)
20              THE CLERK:  Thank you.
21              THE COURT:  All right.  Mr. Miedel, are you handling
22    this?
23              MR. MIEDEL:  I am.
24              THE COURT:  Okay.  I understand that your client
25    wishes to withdraw his previously-entered plea of not guilty
```

```
 1   and enter a guilty plea at this time to two counts in the
 2   superseding indictment, is that correct?
 3            MR. MIEDEL:  That's correct.
 4            THE COURT:  Okay.  And my understanding is, he is
 5   doing so pursuant to a plea agreement with the government, is
 6   that right?
 7            MR. MIEDEL:  That's right.
 8            THE INTERPRETER:  The interpreter asks Your Honor to
 9   put the microphone closer to you.
10            THE COURT:  Oh, sure.
11            THE INTERPRETER:  Thank you, Your Honor.
12            THE COURT:  You want me to repeat anything?
13            THE INTERPRETER:  Yes, please.
14            THE COURT:  Okay.  So Mr. Miedel, I want to confirm
15   with you that your client wishes to withdraw his
16   previously-entered plea of not guilty and enter a guilty plea
17   at this time to two counts of the superseding indictment,
18   pursuant to a plea agreement with the government.
19            MR. MIEDEL:  That's right, Your Honor.  Mr. Trujillo
20   is planning to plead guilty to Counts 42 and 45 of the
21   indictment.
22            THE COURT:  Now, Mr. Trujillo --
23            THE DEFENDANT:  Yes, Your Honor?
24            THE COURT:  As you just heard, Mr. Trujillo, your
25   attorney has advised me that it is your intention to plead
```

```
 1   guilty to these two counts in the superseding indictment at
 2   this time, and that you're going to do so pursuant to an
 3   agreement with the government.
 4           These are very serious decisions and I must make
 5   sure that you are making them understanding the rights and the
 6   consequences of your guilty plea.  I will be explaining to you
 7   the rights that you will be giving up by pleading guilty.
 8   Before I accept your guilty plea, there are a number of
 9   questions that I have to ask you to establish that the plea is
10   valid.  If you do not understand any of my questions, just let
11   me know and I'll rephrase them for you.  Also, if you would
12   like to consult with your attorneys further, let me know and
13   I'll give you as much time as you need.  Do you understand?
14           THE DEFENDANT:  Yes.
15           THE COURT:  Now, your answers to my questions must
16   be under oath, so I'll ask you to stand and raise your right
17   hand.
18           (Defendant sworn.)
19           THE DEFENDANT:  Yes, I affirm.
20           THE CLERK:  Please have a seat.
21           THE COURT:  You should understand, Mr. Trujillo,
22   that if you answer any of my questions falsely -- and by that,
23   I mean knowing that the answer is false -- your answers can be
24   used against you in a separate prosecution for perjury or
25   making a false statement.  Do you understand that?
```

```
 1                THE DEFENDANT:  Yes.

 2                THE COURT:  Please state your full name for the

 3   record.

 4                THE DEFENDANT:  My entire name?

 5                THE COURT:  Yes.

 6                THE DEFENDANT:  Hector Efrain Trujillo Aldana.

 7                THE COURT:  How old are you?

 8                THE DEFENDANT:  Sixty-three years old.

 9                THE COURT:  How much formal education have you had?

10                THE DEFENDANT:  University.  I'm an attorney.

11                THE COURT:  Are you able to speak or understand any

12   English?

13                THE DEFENDANT:  No.

14                THE COURT:  Have you been able to understand

15   everything that has been said to you so far through the

16   interpreter?

17                THE DEFENDANT:  Perfectly.

18                THE COURT:  Have you been able to communicate with

19   your attorneys with an interpreter or otherwise?

20                THE DEFENDANT:  Always.

21                THE COURT:  Mr. Miedel, have you had any

22   difficulties communicating with your client?

23                MR. MIEDEL:  No, Your Honor.

24                THE COURT:  Mr. Trujillo, have you ever been treated

25   or hospitalized for any mental illness?
```

```
 1                THE DEFENDANT:  No.

 2                THE COURT:  Are you currently or have you recently

 3     been under the care of a doctor or psychiatrist for any

 4     reason?

 5                THE DEFENDANT:  No.

 6                THE COURT:  Have you ever been treated or

 7     hospitalized for any type of addiction, such as drugs or

 8     alcohol?

 9                THE DEFENDANT:  No.

10                THE COURT:  Have you taken any drugs, medicine or

11     pills or had any alcoholic beverages within the last two days?

12                THE DEFENDANT:  Only analgesic pills because I have

13     pain in my back.

14                THE COURT:  Is there anything about those pills that

15     affects your ability to think or to process?

16                THE DEFENDANT:  I don't think so.

17                THE COURT:  And when did you last take those pills?

18                THE DEFENDANT:  Last night, I took a pill for the

19     pain, naproxen.

20                THE COURT:  And is your mind clear today?

21                THE DEFENDANT:  Yes.

22                THE COURT:  And do you understand fully why you're

23     here?

24                THE DEFENDANT:  Yes, I understand.

25                THE COURT:  Okay.  Mr. Miedel, have you discussed
```

1    the matter of pleading guilty with your client?

2              MR. MIEDEL:  Yes, I have.

3              THE COURT:  Does he understand the rights that he

4    will be waiving by pleading guilty?

5              MR. MIEDEL:  Yes, he does.

6              THE COURT:  Is he capable of understanding the

7    nature of these proceedings?

8              MR. MIEDEL:  Yes, he is.

9              THE COURT:  Do you have any doubt as to his

10   competence to plead guilty at this time?

11             MR. MIEDEL:  I do not.

12             THE COURT:  Have you advised him of the maximum and

13   minimum sentence and fine that can be imposed in this matter?

14             MR. MIEDEL:  Yes.

15             THE COURT:  Have you discussed with him the effect

16   of the Sentencing Guidelines?

17             MR. MIEDEL:  Yes.

18             THE COURT:  Mr. Trujillo, have you reviewed a copy

19   of the indictment or superseding indictment, S-1, that

20   contains the charges that have been made against you with your

21   attorneys?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And have you had sufficient time to do

24   that?

25             THE DEFENDANT:  Yes.

1          THE COURT:  Now, specifically, in Counts 42 and 45,

2    you're charged with participating in a wire fraud conspiracy,

3    and also engaging in wire fraud.  Do you understand those

4    charges?

5          THE DEFENDANT:  Yes, I understand.

6          THE COURT:  Do you have any questions about the

7    charges at all?

8          THE DEFENDANT:  No.

9          THE COURT:  Have you had sufficient time to discuss

10   with your attorneys whether or not to plead guilty?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Are you fully satisfied with the

13   counsel, representation and advice given to you by your

14   attorneys in this matter?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Let's talk about the rights that you

17   will be giving up by pleading guilty, Mr. Trujillo.  You have

18   a right to continue to plead not guilty.  No one can be forced

19   to plead guilty.  If you persisted in your not guilty plea,

20   you would have the right under the Constitution and laws of

21   the United States to a speedy and public trial by jury.  Do

22   you understand?

23         THE DEFENDANT:  Yes.

24         THE COURT:  At trial, you would be presumed to be

25   innocent and the government would have to prove your guilt

```
 1    beyond a reasonable doubt.  Do you understand?

 2              THE DEFENDANT:  I understand.

 3              THE COURT:  You would have the right to the

 4    assistance of counsel for your defense, and the attorneys who

 5    have been representing you thus far would represent you at the

 6    trial and at all other phases related to the trial.  Do you

 7    understand that?

 8              THE DEFENDANT:  I understand.

 9              THE COURT:  You would have the right to see and hear

10    all witnesses and to have them cross-examined in your defense.

11    Do you understand?

12              THE DEFENDANT:  I understand.

13              THE COURT:  You would have the right not to testify

14    unless you voluntarily chose to do so in your own defense.  Do

15    you understand?

16              THE DEFENDANT:  I understand.

17              THE COURT:  You would have the right to compel the

18    attendance of witnesses to testify in your defense.  Do you

19    understand?

20              THE DEFENDANT:  I understand.

21              THE COURT:  Now, if you decided not to testify or

22    not to put on any evidence at all at the trial, the fact that

23    you did not do so could not be used against you.  Do you

24    understand that?

25              THE DEFENDANT:  I understand.
```

 1              THE COURT:  By entering a guilty plea and if I

 2     accept your plea, there will be no trial, and you will have

 3     waived or given up your right to a trial and all of these

 4     other rights that I've just described.  Do you understand?

 5              THE DEFENDANT:  Yes.

 6              THE COURT:  There will be no right of appeal from

 7     the judgment of guilt if you plead guilty.  Do you understand

 8     that?

 9              THE DEFENDANT:  Yes.

10              THE COURT:  I will simply enter a judgment of guilt

11     on the basis of your guilty plea and the government will be

12     relieved of any responsibility to prove your guilt.  Do you

13     understand?

14              THE DEFENDANT:  I understand.

15              THE COURT:  And if you plead guilty, I'll have to

16     ask you a number of questions to establish that you are, in

17     fact, guilty of the crime that you're pleading guilty to, and

18     by answering my questions, you will be giving up your right

19     against self-incrimination.  Do you understand that?

20              THE DEFENDANT:  I understand.

21              THE COURT:  Mr. Trujillo, do you understand each and

22     every one of these rights?

23              THE DEFENDANT:  Yes.

24              THE COURT:  And are you willing to give up your

25     right to a trial and all of these other rights?

```
 1              THE DEFENDANT:  Yes.
 2              THE COURT:  Now, as you confirmed earlier, you are
 3   pleading guilty pursuant to a plea agreement with the
 4   government, and that agreement has been marked as Court
 5   Exhibit Number 1.  Did you sign that agreement on the last
 6   page of it, above where your name is printed?
 7              THE DEFENDANT:  Yes, I did.
 8              THE COURT:  Did you have an opportunity to read and
 9   discuss the agreement with your lawyers before signing it?
10              THE DEFENDANT:  My attorneys read it to me.
11              THE COURT:  Okay.  And did you discuss it with them?
12              THE DEFENDANT:  Yes.
13              THE COURT:  Did you have sufficient time to do that?
14              THE DEFENDANT:  Yes.
15              THE COURT:  Do you understand the terms of your
16   agreement?
17              THE DEFENDANT:  Yes.
18              THE COURT:  Mr. Miedel, did you have enough time to
19   review the plea agreement with your client?
20              MR. MIEDEL:  Yes.
21              THE COURT:  Mr. Trujillo, do you have any questions
22   at all about your plea agreement?
23              THE DEFENDANT:  For -- at the time being, I don't.
24              THE COURT:  Does the agreement represent your entire
25   understanding with the government?
```

```
 1              THE DEFENDANT:  Yes.
 2              THE COURT:  Has anyone made you any promise or
 3    assurance that is not in the agreement to get you to accept
 4    it?
 5              THE DEFENDANT:  No.
 6              THE COURT:  Has anyone threatened you in any way to
 7    get you to accept this agreement?
 8              THE DEFENDANT:  No.
 9              THE COURT:  Mr. Miedel, were all formal plea offers
10    from the government communicated to your client?
11              MR. MIEDEL:  Yes, they were.
12              THE COURT:  Now, Mr. Trujillo, a moment ago, I
13    discussed the two charges to which you'll be pleading guilty,
14    which are wire fraud conspiracy and also wire fraud.  I'm now
15    going to tell you about the possible penalties that you face
16    by pleading guilty to these two crimes.
17              THE INTERPRETER:  I'm sorry, Your Honor.  May I have
18    the repetition of the last sentence?
19              THE COURT:  Yes.  I'm now going to tell you about
20    some of the penalties that you face by pleading guilty to
21    these two crimes.
22              First, with respect to wire fraud conspiracy, the
23    maximum term of imprisonment that you face is 20 years.  There
24    is no minimum mandatory term of imprisonment.  Any term of
25    imprisonment can be followed by a period of supervised release
```

```
 1    of up to three years.
 2             Supervised release refers to the period of time when
 3    you will be subject to supervision by the Probation
 4    Department, and that's after completing any term of
 5    imprisonment, if one is imposed and after being on supervised
 6    release for any period of time.  One moment.  Sorry.  That
 7    would be after serving any term of imprisonment.
 8             The most important thing, though, is that you are
 9    found to have violated any rule of supervised release, you
10    could be sent back to prison, and that time would be without
11    any credit for any time you might have served in prison or any
12    time you might have spent on supervised release.
13             Do you understand what supervised release is?
14             THE DEFENDANT:  Yes.
15             THE COURT:  The maximum term that you could be sent
16    back to prison if you violate a term of supervised release is
17    two years.
18             THE DEFENDANT:  I'm sorry?
19             THE COURT:  The maximum term of imprisonment that
20    you could be sent -- sentenced to if you violate a term of
21    supervised release is two years.
22             THE DEFENDANT:  (No response.)
23             THE COURT:  Let me repeat that.  I apologize.
24             THE INTERPRETER:  I didn't understand that.
25             THE COURT:  I didn't phrase that very well.  Let me
```

1    try that again.

2           Supervised release, as I said, is a period of time

3    during which you have to follow certain rules.  If you violate

4    any of those rules, you could be sent back to prison for up to

5    two years, and that would be without any credit for any time

6    you may have served in prison before that or any time you may

7    have spent on supervised release.  Do you understand that?

8           THE DEFENDANT:  Okay.

9           THE COURT:  Okay.  Supervised release itself is a

10   period of time during which you have to follow rules after any

11   term of imprisonment you are sentenced to, if you are

12   sentenced to a term of imprisonment.  Do you understand that?

13          THE DEFENDANT:  Yes, I understand.

14          THE COURT:  All right.  The maximum potential fine

15   that you face is the greater of $250,000 or twice the gross

16   gain or twice the gross loss caused by the crime in which

17   you're pleading guilty to.  You also will be required to pay

18   restitution in the full amount of each victim's losses, and

19   the amount of that will be determined at the time of

20   sentencing.  Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  I also will have to impose a special

23   assessment of $100, to be paid at the time of sentencing.  And

24   in addition, you face the possible penalty of removal or

25   deportation from the United States, as set forth in paragraph

```
 1   14 of your plea agreement.  Are you aware of that potential

 2   penalty?

 3              THE DEFENDANT:  Yes.

 4              THE COURT:  Finally, you face a potential penalty of

 5   criminal forfeiture, which would include forfeiting any

 6   proceeds that you may have received from your crimes, and the

 7   terms of the forfeiture are going to be set forth in

 8   paragraphs six through 13 of your plea agreement.  And have

 9   you reviewed those provisions with your attorney?

10              THE DEFENDANT:  Yes.

11              THE COURT:  In particular, I want to point out that

12   you have agreed or consented to the forfeiture of $175,000,

13   which represents kickbacks that you received in connection

14   with certain media and marketing rights contracts that were

15   awarded by the Guatemalan Soccer Federation as part of this

16   crime.  Do you understand that?

17              THE DEFENDANT:  Yes.

18              THE COURT:  And do you also understand that your

19   plea agreement contains a certain schedule by which you have

20   agreed to pay back or to pay that forfeiture amount?

21              THE DEFENDANT:  Yes.  It's been explained to me.

22              THE COURT:  Now, you face for the second crime of

23   wire fraud essentially the same penalties.  So the maximum

24   term of imprisonment is 20 years.  There is no mandatory

25   minimum term of imprisonment.  The maximum period of
```

```
 1   supervised release --
 2           THE DEFENDANT:  Yes.  Excuse me, Your Honor.  I
 3   understand you said there is no minimum, but here, it says
 4   it's a minimum of zero.
 5           THE COURT:  Zero is essentially the same as none, at
 6   least in my book.  So there's no mandatory term of
 7   imprisonment that I have to impose at the time of sentencing.
 8           THE DEFENDANT:  Okay.
 9           THE COURT:  But the maximum term can be up to 20
10   years.  You understand that?
11           THE DEFENDANT:  I understand.
12           THE COURT:  You also face a maximum term --
13   potential term of supervised release of three years, and if
14   you violate any term of supervised release, you could be sent
15   back to prison for up to two years.  Again, that would be
16   without any credit for any time you may have spent in prison
17   before then or any time you may have spent on supervised
18   release.
19           You face also a maximum possible fine of the greater
20   of $250,000 or twice the gross gain or twice the gross loss
21   caused by your crime.  You will have to pay mandatory
22   restitution in the full amount that each victim's loss, and
23   also a hundred dollar special assessment for this count of
24   conviction, as well.
25           You, again, face a potential penalty of removal or
```

```
 1    deportation from the United States and criminal forfeiture, as
 2    I previously explained.
 3              Now lastly, what you should understand is that the
 4    penalties for these crimes can run consecutively.  So for
 5    example, a term of imprisonment on one count can run after or
 6    in addition to the sentence on another count.  Do you
 7    understand that?
 8              THE DEFENDANT:  I didn't understand.
 9              THE COURT:  Let me explain it more simply.  Let's
10    suppose I sentence you on Count 42 to a year in prison.  I
11    could also sentence you to a year in prison on Count 45, to
12    run after the sentence on Count 42.  So that --
13              THE DEFENDANT:  In other words, two years?
14              THE COURT:  Exactly.  One year and then another
15    year.  So consecutive means one after the other, whereas
16    concurrent means running at the same time.
17              THE DEFENDANT:  (Nods head affirmatively.)
18              THE COURT:  It's possible that your sentences will
19    run concurrently or consecutively, but I want to make sure you
20    understand that they can run one after the other.
21              THE DEFENDANT:  Or simultaneously?
22              THE COURT:  Both are possible.  You understand that?
23              THE DEFENDANT:  Yes, I understand.
24              THE COURT:  Do you understand all of the possible
25    consequences of your guilty plea, Mr. Trujillo?
```

```
 1                  THE DEFENDANT:  Yes.

 2                  THE COURT:  Let's turn now to the Advisory

 3     Sentencing Guidelines.  Under the Sentencing Reform Act of

 4     1984, the United States Sentencing Commission has issued

 5     Guidelines for judges to follow in determining the sentence in

 6     a criminal case.  These Guidelines are advisory, and I will

 7     consider them along with particular -- sorry -- the particular

 8     facts and circumstances of your case, as well as other

 9     sentencing factors that are set forth in a federal statute,

10     Title 18, United States Code, Section 3553(a), in determining

11     your sentence.

12                  Have you and your attorney discussed how the

13     Advisory Sentencing Guidelines might apply to your case?

14                  THE DEFENDANT:  Yes.  It's been explained to me.

15                  THE COURT:  You should understand that I will not be

16     able to determine the Advisory Guideline range for your case

17     until after a Pre-sentence Report is prepared by the Probation

18     Department, and after you and your attorneys have had a chance

19     to review that report and make any objections you think are

20     appropriate, including challenging the Guidelines calculation,

21     if you disagree with it.

22                  You should understand that I --

23                  THE DEFENDANT:  (Nods head affirmatively.)

24                  THE COURT:  I'm sorry.  You should understand that

25     any sentence I impose may be may be different from any
```

1  estimate your attorneys have given you.  You should understand

2  also that I have the authority in some circumstances to depart

3  upward or downward from the Guidelines that are calculated,

4  and that could result in a sentence either higher or lower

5  than the Guidelines.  Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  You should understand there's no parole

8  in the federal system and that if you're sentenced to a term

9  of imprisonment, you will not be released on parole.  Do you

10  understand that?

11          THE DEFENDANT:  No, I didn't.  That part, I didn't.

12          THE COURT:  I figured that might be the case.

13          Parole is a concept that exists here in the United

14  States typically in state court, and essentially, it refers to

15  getting out of jail earlier than your sentence would otherwise

16  indicate, and that would be based on certain criteria

17  determined under state law.

18          But that concept does not apply at all in the

19  federal system.  So if you're sentenced to a term of

20  imprisonment in the federal system, you will serve almost the

21  entire time of that sentence, save some credit you might get

22  for your behavior while in prison.  Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Has the government estimated a likely

25  Guidelines range in this case?

```
 1              MR. TUCHMANN:  Yes, Your Honor.  The government's
 2    estimate of the Guidelines range, including acceptance of
 3    responsibility points, is 41 to 51 months, as set forth in the
 4    plea agreement.
 5              And the agreement includes a stipulation by the
 6    defendant to certain aspects of the Guidelines calculation in
 7    the agreement, but he reserves the right to challenge the
 8    application of sophisticated means enhancement and the abuse
 9    of trust enhancement, which are both included in the
10    Guidelines estimate.
11              THE COURT:  Is that correct, Mr. Miedel?
12              MR. MIEDEL:  That's correct.
13              THE COURT:  Mr. Trujillo, you should understand that
14    any estimate that the government has or that your lawyer has
15    with respect to -- I should say has calculated with respect to
16    the Guidelines range could be wrong.  You understand that?
17              THE DEFENDANT:  Yes.
18              THE COURT:  As you sit here today, there is no
19    guarantee as to any particular Guideline range that will be
20    applied at the time of sentencing.
21              THE DEFENDANT:  Yes.
22              THE COURT:  And as you sit here today, there's no
23    way for you to know what your ultimate sentence will be.  Do
24    you understand?
25              THE DEFENDANT:  Yes.
```

1          THE COURT:  You should understand that if the

2    Advisory Guidelines range is different than what you hoped for

3    or expect, you cannot take your guilty plea back.  Do you

4    understand that?

5          THE DEFENDANT:  I understand, but I hope that's not

6    so.

7          THE COURT:  Also, very importantly, you should

8    understand that if the ultimate sentence I impose is different

9    from what you hoped for or expect, you cannot take your guilty

10   plea back.

11         THE DEFENDANT:  I understand.

12         THE COURT:  Now, you should understand under some

13   circumstances, either you or the government might have a right

14   to appeal any sentence that I impose in a case; however, by

15   entering into this plea agreement, you have agreed to give up

16   your right to appeal the sentence and your conviction if I

17   impose a term of imprisonment of 57 months or less.  That's in

18   paragraph four of your plea agreement.

19         THE INTERPRETER:  I'm sorry, Your Honor, the last

20   sentence?

21         THE COURT:  That is in paragraph four of your plea

22   agreement.  Do you understand that?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Mr. Trujillo, do you have any questions

25   about the rights that you are giving up, the punishment that

1   you face, the plea agreement, the nature of the charges or

2   anything else relating to this matter?

3           THE DEFENDANT:  No.

4           THE COURT:  Are you prepared to plead guilty at this

5   time?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Mr. Miedel, do you know of any reason

8   why your client should not plead guilty?

9           MR. MIEDEL:  No, Your Honor.

10          THE COURT:  Mr. Trujillo, what is your plea to Count

11  42 of the superceding indictment, guilty or not guilty?

12          THE DEFENDANT:  Guilty.

13          THE COURT:  And what is your plea to Count 45 of the

14  superseding indictment, guilty or not guilty?

15          THE DEFENDANT:  Guilty.

16          THE COURT:  Are you making these pleas voluntarily

17  and of your own free will?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Has anyone threatened or forced you to

20  plead guilty?

21          THE DEFENDANT:  No.

22          THE COURT:  Other than your plea agreement with the

23  government, has anyone made you any promise that has caused

24  you to plead guilty?

25          THE DEFENDANT:  No.

```
 1              THE COURT:  Has anyone made you any promise as to
 2    what your sentence will be?
 3              THE DEFENDANT:  Not that either.
 4              THE COURT:  Okay.  Tell me in your own words what
 5    makes you guilty of Counts 42 and 45 of the superseding
 6    indictment?
 7              I'm assuming it's an omnibus plea allocution, is
 8    that right?
 9              MR. MIEDEL:  Yeah, Your Honor.  We've prepared an
10    allocution in consultation with the government and
11    Mr. Trujillo is going to read that to you now.
12              THE COURT:  I'm just going to ask that you read
13    slowly enough so that your translator can translate,
14    sentence-by-sentence.
15              THE DEFENDANT:  Your Honor, from December 2009 until
16    December 2015, I was the secretary.  I was the executive
17    committee of the Guatemalan National Soccer Federation.
18              As an officer, I had a duty, a fiduciary duty with
19    the Federation.  The Federation -- the Federation owned media
20    and marketing rights to the international matches of the
21    Guatemalan National -- of the National Federation of Men's
22    Soccer Team from Guatemala.
23              So they would played during the qualifying rounds
24    for the World Cup of 2019 and 2022.  During the period between
25    2009 and 2015, Media World, an American sports marketing
```

```
 1   company located in Miami, contracted with the Federation to
 2   purchase those rights.  To keep themselves in good favor with
 3   officers of the Federation for the purposes of ongoing and
 4   future contract negotiations, the representatives of Media
 5   World, it was agreed we would -- they would pay the president
 6   of the Federation and me with kickbacks.
 7           I received kickback payments on two occasions, which
 8   I shared with others.  One payment was made in 2010, for
 9   continuing to look favorably on the contract between Media
10   World and the Federation, which had been signed before my
11   arrival at the Federation.  The other one was a kickback
12   payment of an illegal commission in 2014, essentially for the
13   same reason.
14           Both payments were sent by wire transfers through
15   interstate and foreign commerce.  Specifically, I received
16   payment for the 2014, after it was wired by Media World to a
17   bank account in the United States controlled by an
18   acquaintance of mine, who then wired much of the money in --
19   from that account to Guatemala, where I received my share.
20           Even though I had a duty to disclose these payments
21   to the Federation, I never made it known to the Federation or
22   any soccer governing body.  As a result, I recognized that I
23   deprived the Federation for my honest services.  I know that
24   it was wrong for me to accept those payments and not make them
25   known.
```

```
 1              Finally, while I understand that venue for those

 2    charges do not lie in the Eastern District of New York, I

 3    agree to waive the venue requirement and I agree to be

 4    prosecuted for those charges in the Eastern District of New

 5    York.

 6              THE COURT:  All right.  Does the government wish for

 7    anything else to be asked of the defendant?

 8              MR. TUCHMANN:  No, Your Honor.  I believe that is

 9    sufficient.

10              THE COURT:  All right.  Based on my observations of

11    Mr. Trujillo and his demeanor in court, as well as his answers

12    to my questions and the answers of his counsel, I do find that

13    Mr. Trujillo is fully competent and capable of entering an

14    informed guilty plea, that he's aware of the nature of the

15    charges and the consequences of his guilty plea, and that the

16    plea he's making is knowing and voluntary.

17              I also find that there is an independent basis in

18    fact to support all the elements of the two crimes to which

19    he's pleading guilty, namely, wire fraud conspiracy and wire

20    fraud, based largely on his allocution just now.

21              I therefore accept your plea, Mr. Trujillo, to

22    Counts 42 and 45 of the superseding indictment.

23              As I mentioned earlier, there will be a Pre-sentence

24    Report prepared in anticipation of sentencing, and you'll be

25    asked to give information for that report.  Typically, you're
```

```
 1   asked to given an interview to a probation officer.  You have

 2   the right to have your counsel present with you during that

 3   interview.  Would you like him to be present?

 4             THE DEFENDANT:  Yes.

 5             THE COURT:  Sentencing will be on September 20th, at

 6   11:00 a.m.

 7             Anything further from the government?

 8             MR. TUCHMANN:  Just Your Honor, I have a copy of the

 9   preliminary Order of Forfeiture to hand up to the Court.  As

10   Your Honor stated, the defendant is agreeing to forfeit

11   $175,000, and in that regard, following discussions with

12   counsel, I think the parties jointly move for $50,000 in cash

13   that's currently supporting the defendant's bond -- there's

14   more cash than that supporting it, but of the cash, we move

15   the $50,000 be released from supporting the bond for the

16   purpose of making the first payment on the forfeiture

17   obligation.

18             THE COURT:  And is that in the order?

19             MR. TUCHMANN:  That's not in the -- that's not in

20   that order itself.  It's contemplated by the order, but it's

21   not specifically moved for in that order.

22             THE COURT:  Okay.  So I've signed the forfeiture

23   order.  I assume there's no objection from the defense, is

24   that right?

25             MR. MIEDEL:  Yes.
```

1              THE COURT:  And I will order the Clerk's Office to

2    release 50,000 to the government as the first payment towards

3    the forfeiture amount.

4              That's what you need, right?

5              MR. TUCHMANN:  Sure.  Whether it's released directly

6    to us or to defense counsel, either way, we certainly trust

7    that it will come to us.  I'm not sure the procedure.  I think

8    the procedure is now that it comes from an office in

9    Washington rather than the Clerk's Office.  But if the Court

10   can enter an order, I'm sure that we can move to have it --

11             THE COURT:  Well, I should specify to whom it should

12   be released, so --

13             MR. MIEDEL:  If it can be directly released to the

14   government, that's even simpler.

15             MR. TUCHMANN:  Sure.  In that case, it would be a

16   check made out to the United States Marshal Service with the

17   docket number on the face of the check.

18             THE COURT:  Okay.

19             MR. TUCHMANN:  I just don't know if the office in

20   Washington, if their procedures will allow for that.  If they

21   do, that's fine --

22             THE COURT:  Okay.

23             MR. TUCHMANN:  -- with us.

24             THE COURT:  Well, why don't you advise my deputy as

25   to exactly --

```
 1                MR. TUCHMANN:  Sure.

 2                THE COURT:  -- who we should direct the check to be

 3     made out to within the next day or so.  I assume there's not

 4     going to be any objection from the defense --

 5                MR. MIEDEL:  No.

 6                THE COURT:  -- in terms of my specifying that.  Okay?

 7                MR. TUCHMANN:  Thank you, Your Honor.

 8                THE COURT:  And just for the record, I'm handing

 9     back Court Exhibit Number 1, which is the plea agreement, the

10     original one, to the government.

11                All right.  I think that concludes this proceeding.

12     Anything else from either party?

13                MR. TUCHMANN:  No, Your Honor.

14                MR. MIEDEL:  Your Honor, just one thing?

15                THE COURT:  Yes?

16                MR. MIEDEL:  I've already discussed this with the

17     government.  But Mr. Trujillo's bond conditions currently

18     require him to remain in Miami, unless he comes up here for --

19     to meet with me or for court appearances.  So he came up here

20     yesterday.  He's returning to Miami tomorrow.  But he would

21     like today to go to New Jersey to visit his cousin, where he's

22     previously stayed before he went to Miami.  The government

23     doesn't object, as long as we check with Pretrial Services,

24     which we intend to right after the proceedings.

25                THE COURT:  So a temporary modification to allow the
```

```
 1    defendant to visit New Jersey --

 2              MR. MIEDEL:  Yes.

 3              THE COURT:  -- or go to New Jersey today?

 4              MR. MIEDEL:  Today.

 5              THE COURT:  Okay.  That sounds fine.  I'll go ahead

 6    and order that.

 7              There's one other thing about -- oh, do I have to

 8    modified his bail conditions because some of this money we

 9    just released was securing his bond, so now that the amount

10    that secures his bond is less, right, by 50,000?

11              MR. TUCHMANN:  Yes, Your Honor.

12              THE DEFENDANT:  Okay.  So whatever the number is, it

13    will be $50,000 less.

14              MR. MIEDEL:  Okay.

15              THE COURT:  So I think this concludes today's

16    proceeding.  Thank you, everyone.

17              MR. TUCHMANN:  Thank you, Your Honor.

18              (Proceedings concluded.)

19

20

21

22

23

24

25
```